***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times herein, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The Zenith Insurance Company was the compensation carrier on the risk on all relevant dates herein.
4. Plaintiff's average weekly wage on 23 January 2000 was $566.01, yielding a compensation rate of $377.36.
5. Plaintiff alleges that she sustained a compensable injury to her back and cervical spine on 23 January 2000. Such claim has been denied by defendants.
6. The following documents were stipulated into evidence:
Pretrial Agreement;
Employment file of Teresa Sprinkle from Eblen Short Stop Stores;
Medical records;
Payroll records;
Payment printout;
Job description;
Plaintiff's answers to interrogatories;
7. The issues for determination are:
 a. Whether plaintiff sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 23 January 2000, and, if so, to what compensation is plaintiff entitled;
 b. Whether plaintiff has a pre-existing condition which was not affected by any incident occurring on 23 January 2000;
 c. Whether plaintiff's current condition and need for medical treatment is related to a 23 January 2000 compensable injury, and;
 d. Whether defendants are entitled to a credit pursuant to N.C. Gen. Stat. § 97-42 for employer provided disability payments.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner's hearing, plaintiff was thirty-six (36) years of age with her date of birth being 11 January 1965. Plaintiff completed the tenth grade in high school, and obtained her GED in 1983. Prior to working for defendant-employer, plaintiff had been employed by another convenience store business.
2. Plaintiff began working for defendant-employer on 23 June 1998. Shortly thereafter, plaintiff was promoted to a manager position. As a manager, plaintiff worked fifty-five to sixty-five (55-65) hours per week, and her duties included paperwork, running registers, stocking coolers, sweeping, mopping, putting up groceries, cleaning gas pumps and completing inventory. Plaintiff's job as a manager required her to be on her feet four to five (4-5) hours each day and to lift up to twenty to thirty (20-30) pounds on a daily basis.
3. Prior to her employment with defendant-employer, in August 1993, plaintiff underwent an anterior diskectomy and fusion procedure at the C4-5 and C5-6 levels. This surgery was performed by Dr. A. Gregory Rosenfeld, a neurosurgeon. As a result of this surgery, Dr. Rosenfeld assigned plaintiff a ten percent (10%) permanent partial disability rating to her neck.
4. Plaintiff also sustained an injury to her lower back on 2 May 1997. As a result of that injury, plaintiff received a three percent (3%) permanent partial disability rating to her spine.
5. Regarding the condition of plaintiff's back subsequent to these surgical procedures and prior to the incident in question, a 17 March 1999 report from Dr. John W. Robinson notes that plaintiff was limited to light duty work beginning 13 March 1999. However, plaintiff testified at the hearing before the deputy commissioner that following these earlier procedures, she recovered and was able to perform the duties of her employment with defendant-employer without any problems prior to 23 January 2000. The Full Commission accepts as credible plaintiff's testimony on this issue. No other evidence was produced that plaintiff experienced any physical difficulties performing her work for defendant-employer prior to 23 January 2000. Plaintiff's testimony regarding her physical condition, and that she was able without difficulty to perform the duties of employment prior to 23 January 2000 was corroborated by the testimony of Ms. Arlene Mathis, a former manager, and Ms. Norma Brown.
6. On 23 January 2000, at approximately 10:00 p.m., plaintiff was picking up a case of twelve (12) one-liter bottles of water while stocking the store. As she lifted the box, plaintiff experienced a strain and pull in her right shoulder and in the right side of her neck. Plaintiff was the only employee in the store at the time of this incident.
7. Following this incident, plaintiff wrote a note to Ms. Norma Brown, an assistant manager, who was scheduled to arrive at work at approximately 5:00 a.m. At the hearing before the Deputy Commissioner, plaintiff testified that in this note, she informed Ms. Brown that she had injured herself and possibly had pulled a muscle. Additionally, in the note, plaintiff requested that Ms. Brown notify their supervisor, Ms. Helen Oberdier, regarding the incident and her injury. On 24 January 2000, plaintiff verbally informed Ms. Brenda Trantham, defendant-employer's Payroll and Accounting Supervisor, of the incident and injury and an Industrial Commission Form 19 was submitted on 25 January 2000.
8. Plaintiff first sought medical attention on 26 January 2000, when she reported to ProMed and was examined by Dr. David F. Ward. Following an examination, plaintiff was diagnosed as having sustained a cervical strain, and also as having degenerative disc disease. Plaintiff was prescribed medications for her injury, was referred to physical therapy, and was released to return to work with restrictions.
9. Subsequent to her examination at ProMed, plaintiff returned to work with defendant-employer earning her regular wages. Plaintiff continued to work in this capacity through 21 February 2000, when she was examined by Dr. Tally H. Eddings. Throughout the period from when she was released to restricted work by Dr. Ward until her initial examination by Dr. Eddings, plaintiff continued to experience pain in her neck and shoulder which was more severe when performing certain activities.
10. On 22 March 2000, plaintiff was examined by Dr. Stephen David, a member of the same practice as Dr. Eddings. Upon examination, Dr. David noted that x-rays taken that day demonstrated a nonunion of the C4-5 fusion. Dr. David recommended that plaintiff undergo a CT and an MRI scan, and modified her work restrictions to no lifting, pushing or pulling greater than twenty (20) pounds.
11. On 31 March 2000, MRI and CT scans of plaintiff's cervical spine were performed. The MRI revealed a nonunion of the fusion at the C4-5 level. There was also disc degeneration and left paracentral herniation at the C6-7 level. The CT revealed a complete fusion at the C5-6 level. Upon review of these scans, on 7 April 2000, Dr. David recommended a revision of C4-5 anterior cervical fusion surgery with bone graft implanting.
12. Once it was determined that surgery was necessary, plaintiff decided to seek medical attention from Dr. Rosenfeld, who had performed the previous fusion procedure. Pending surgery, plaintiff was removed from work by Dr. David, and subsequently by Dr. Rosenfeld as of 25 April 2000.
13. On 13 September 2000, plaintiff underwent an anterior cervical fusion procedure at the C4-5 level, which was performed by Dr. Rosenfeld. Examinations subsequent to the surgery indicated that the procedure was successful, and on 30 November 2000, Dr. Rosenfeld referred plaintiff to physical therapy and recommended a functional capacity evaluation.
14. Following the functional capacity evaluation, Dr. Rosenfeld released plaintiff to return to sedentary work as of 15 January 2001. Upon her return to work for defendant-employer, plaintiff attempted to perform her duties despite experiencing increased pain for which she regularly took pain medication. Plaintiff continued working in this capacity until 22 March 2001, when she returned to Dr. Rosenfeld who again removed her from work.
15. During the period of her attempted return to work from January to March 2001, plaintiff's activities outside of work were significantly limited. At the initial hearing, plaintiff testified that physical activity causes her pain to increase. As of her most recent examination on
13 September 2001, plaintiff had not reached maximum medical improvement and Dr. Rosenfeld recommended a pain management program for plaintiff's chronic pain syndrome.
16. Based upon the credible evidence of record, plaintiff did not unjustifiably refuse suitable employment in that she was never able to perform her modified duties during the January to March 2001 period without experiencing debilitating pain.
17. On 8 August 2001, plaintiff was evaluated by Mr. Randy L. Adams, M.Ed., a certified vocational evaluator. In the opinion of Mr. Adams, plaintiff was unable to return to any type of competitive employment based upon her physical condition, level of pain, and restrictions.
18. During his deposition, Dr. Rosenfeld expressed that it was difficult to assess what percentage of the condition for which he performed the second fusion surgery was due to plaintiff's 1993 injury as compared to her January 2000 injury. However, in his testimony Dr. Rosenfeld clarified and the Commission finds that plaintiff's 23 January 2000 injury aggravated her pre-existing cervical spine condition.
19. Plaintiff received $2,742.79 in short term disability benefits from an employer funded plan for the period of 9 May 2000 through 9 July 2000. Plaintiff also received long-term disability benefits from an employer-funded plan. The evidence was insufficient upon which to enter a finding regarding the actual amount of long term disability benefits received by plaintiff.
20. On 23 January 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned.
21. Plaintiff's cervical problems which necessitated the 13 September 2000 fusion procedure with the implantation of instrumentation at the C4-5 level was the direct and natural result of and causally related to her 23 January 2000 specific traumatic incident.
22. As the result of her 23 January 2000 injury by accident in the form of a specific traumatic incident, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other employment for the periods of 25 April 2000 to 15 January 2001 and from 22 March 2001 through the present and continuing.
23. Defendants' actions in this matter were reasonable, and were not based upon stubborn, unfounded litigiousness.
24. This matter was appealed to the Full Commission by defendants from an Opinion and Award awarding benefits and results in an affirmation of that award.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 23 January 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's cervical problems which necessitated the 13 September 2000 fusion procedure at the C4-5 level were the direct and natural result of and causally related to her 23 January 2000 injury by accident in the form of a specific traumatic incident. Id.
3. As the result of her 23 January 2000 injury by accident in the form of a specific traumatic incident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $377.36 per week for the periods of 25 April 2000 to 15 January 2001 and from 22 March 2001 through the present and continuing until such time as she returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to a credit for short term and long term disability benefits paid plaintiff. N.C. Gen. Stat. § 97-42.
5. As the result of her 23 January 2000 injury by accident in the form of a specific traumatic incident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred by plaintiff. N.C. Gen. Stat. §§ 97-25; 97-25.1.
6. Because defendants' actions in this matter were reasonable and were not based upon stubborn, unfounded litigiousness, plaintiff is not entitled to an award of attorney's fees as part of the bill of costs pursuant N.C. Gen. Stat. § 97-88.1.
7. Plaintiff is entitled to an attorney's fee assessed against defendants in the amount of $750.00 pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $377.36 per week for the periods of 25 April 2000 to 15 January 2001 and from 22 March 2001 through the present and continuing until such time as she returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the credit in defendants' favor and to the attorney's fee approved below.
2. Defendants are entitled to a credit against the compensation awarded herein for short term and long term disability benefits paid plaintiff.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her 23 January 2000 injury by accident.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs, including a reasonable attorney's fee of $750.00 to plaintiff's counsel.
This the 8th day of October 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ RENE C. RIGGSBEE COMMISSIONER